UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
MATTHEW YORZINSKI,                          :
                                            :
                              Plaintiff,    :
                                            :
              -v-                           :
                                            :
THE CITY OF NEW YORK, New York City         :
Police Department Officer SOCRATES SOTO,    :
(shield no. 026714), and, Sergeant GEORGE   :
GRIFFO (shield no. 1304),                   :
                                            :
                             Defendants.    :
------------------------------------------------------------ X
```

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:  3/31/2016 |

1:14-cv-1302-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff, Matthew Yorzinski, a Yankees season ticket holder, was ejected from Yankee

Stadium during a game, and was escorted by a stadium attendant to the sidewalk outside.  He

approached a group of police officers to ask for help to reenter the stadium.  He was told to "go

away," and was then arrested and held overnight in jail on the basis of charges that were later

dismissed.  Mr. Yorzinski filed this action under 42 U.S.C. § 1983 for false arrest and other claims

against his arresting officers, New York Police Department ("NYPD") Officer Socrates Soto and

Sergeant George Griffo, and the City of New York (collectively, "Defendants").

Defendants argue that the officers had probable cause to arrest Mr. Yorzinski for trespass,

because, although unbeknownst to him, the publicly accessible portion of the sidewalk outside of

Yankee Stadium where he stood was owned by the Yankees.  Because a reasonable jury could

conclude that Mr. Yorzinski's ejection from the stadium was not an order by the attendant also to

leave the privately owned portion of the sidewalk outside, and because there is a genuine dispute

regarding whether the police later ordered Mr. Yorzinski to leave that portion of the sidewalk prior

to his arrest, Defendants' motion for summary judgment is denied.

I.    **BACKGROUND**

A.  **Factual Background**[1]

On September 1, 2012, Mr. Yorzinski traveled from Branford, Connecticut to New York to attend a baseball game at Yankee Stadium.  Declaration of Theresa D'Andrea in Supp. of Defs.' Mot. for Summ. J. ("D'Andrea Decl."), Dkt. No. 43, Ex. B, Matthew Yorzinski Deposition ("Yorzinski Dep.") 16:8-17:20.  Mr. Yorzinski was accompanied by his girlfriend.  Defs.' Local Rule 56.1 Statement of Undisputed Facts ("Defs.' SUF") ¶¶ 1-2; Yorzinski Dep. 17:10-18.  The couple boarded a Metro North train that morning, arrived at the Yankee Stadium stop in the Bronx, and entered the stadium at approximately 12:30 in the afternoon.  Yorzinski Dep. 20:5-23:23.

Mr. Yorzinski and his girlfriend stopped at one of the stadium vendors and purchased two beverages.  *Id.* 24:7-25:12.  Accompanied by a stadium attendant, they took their seats around 12:55 p.m., approximately ten minutes before the game was scheduled to begin.  *Id.* 27:8-13, 24:2-4, 28:14-22.  After about two innings, Mr. Yorzinski and his girlfriend left their seats to use the restroom.  *Id.* 30:25-31:10.  They were away for approximately five minutes.  *Id.* 31:11-13.  Upon their return, they noticed that their seats were occupied.  *Id.* 30:25-31:10.  Mr. Yorzinski asked the "seat attendant if he could help [those] guests find their seats, check their tickets . . . because they were sitting in [his] seats."  *Id.*  Mr. Yorzinski spoke to the seat attendant for about five minutes and, at approximately 2:45 p.m., after examining the couple's tickets, the attendant asked Mr. Yorzinski to follow him, took Mr. Yorzinski down an elevator, and escorted him out of the stadium.[2]  *Id.* 33:12-36:21, 39:7-13; Defs.' SUF ¶ 3; D'Andrea Decl., Ex. F.  The attendant kept both tickets so that Mr.

---

[1] Unless otherwise stated, the following facts are not disputed for purposes of this motion, or are taken in the light most favorable to Mr. Yorzinski.

[2] Mr. Yorzinski was escorted outside the stadium alone; his girlfriend remained inside the stadium.  Yorzinski Dep. 34:8-10; *see also id.* 45:19-23.

Yorzinski would be prevented from reentering the stadium.  Defs.' SUF ¶ 4; Yorzinski Dep. 34:11-13.  The attendant left Mr. Yorzinski outside of the stadium; he did not give Mr. Yorzinski any additional directions on where he must go.  Yorzinski Dep. 33:12-34:7, 38:11-13.

Once outside, Mr. Yorzinski approached another stadium attendant, explained that he had been escorted outside without explanation, and asked to be allowed back inside.  *Id.* 39:17-23.  When that person said that he could not help, Mr. Yorzinski walked around the stadium where he encountered another Yankee Stadium attendant who also said she could not allow him to reenter.  *Id.* 40:20-41:17.  While he was denied reentry, the record does not suggest that either attendant directed Mr. Yorzinski to leave the area or the sidewalk abutting the stadium.  *See Id.* 39:17-40:2, 40:8-41:17.

Mr. Yorzinski then made his way toward the stadium's customer service area, located outside of Gate Four.  *Id.* 39:17-40:2, 41:18-20.  On his way there, Mr. Yorzinski noticed a group of approximately eight police officers.  *Id.* 40:3-7, 42:17-18.  He approached the officers, hoping to obtain their assistance to reenter the stadium so that he could watch the remainder of the game.  *Id.* 40:3-7, 43:14-44:3.

Around the same time that Mr. Yorzinski was escorted out of the stadium, defendant Sergeant George Griffo received a call over the police radio informing him that "[t]here was some type of disturbance in front of Gate 2" and that "[t]he police were needed there."  Defs.' SUF ¶ 7; D'Andrea Decl., Ex. D, George Griffo Deposition ("Griffo Dep.") 16:11-17:20.  Sergeant Griffo made his way to the location and joined a group of Yankee Stadium police officers who were present at the scene.  Griffo Dep. 18:8-13.  Those officers informed Sergeant Griffo that Mr. Yorzinski had been ejected from the stadium due to "some type of improper behavior" and that he was "insisting on going back in."  Pl.'s Local Rule 56.1 Statement of Undisputed Facts ("Pl.'s SUF") ¶ 10; Griffo Dep. 18:8-19:3.  After he arrived at the location, Sergeant Griffo called defendant

Officer Socrates Soto for assistance.  Defs.' SUF ¶ 12; D'Andrea Decl. Ex. J, Socrates Soto Deposition ("Soto Dep.") 27:14-24.

Precisely what happened when Mr. Yorzinski approached the group of NYPD officers is in dispute.  According to Mr. Yorzinski, among the group of officers, he spoke primarily to Officer Soto.  Yorzinski Dep. 44:21-45:4.  Mr. Yorzinski attempted to explain to Officer Soto what had happened with the hope of "get[ting] this straightened out" so that he could "reenter the stadium." *Id.* 45:11-24.  Officer Soto declined to allow Mr. Yorzinski back into the stadium.  *Id.* 45:24-46:9. According to Defendants, however, Sergeant Griffo was summoned to the scene after Yankee Stadium police informed him that Mr. Yorzinski "was refusing to leave the area."  Defs.' SUF ¶ 10. Defendants maintain that the police officers outside the stadium were trying to explain to Mr. Yorzinski that he was not allowed back inside the stadium, and Sergeant Griffo "tr[ied] to explain to Mr. Yorzinski, that once you are ejected from the Stadium . . . [y]ou can't go back in the Stadium. You might as well just leave."  Griffo Dep. 18:8-19:11.  When Mr. Yorzinski insisted on reentering the stadium, Defendants assert, Sergeant Griffo "informed him if you don't leave, you will be subject to being arrested."  *Id.* 20:25-21:10.  Sergeant Griffo "probably told [Mr. Yorzinski] that one or two times . . . to give him a chance to leave."  *Id.*

In Mr. Yorzinski's account of the events, only two to three minutes elapsed from the time that he first approached the group of NYPD officers until his conversation with Officer Soto came to an end.  Yorzinski Dep. 46:14-17.  At that point, Officer Soto told Mr. Yorzinski, "go away or are you coming with me."  Pl.'s SUF ¶ 11; Yorzinski Dep. 45:24-46:9, 46:18-20, 48:5-9.  Mr. Yorzinski "took a step away and then [Officer Soto] grabbed [him] by the arm and . . . walked [him] over to the marked police car" where Officer Soto patted him down, frisked him, and handcuffed him. Yorzinski Dep. 48:10-24.  According to Mr. Yorzinski, although Officer Soto told him to "go away," he "didn't even really get a chance to go away."  *Id.* 46:23-47:4.

4

By contrast, based on Defendants' account, the officers' exchange with Mr. Yorzinski lasted seven to ten minutes, during which Sergeant Griffo repeatedly told Mr. Yorzinski to leave.  Griffo Dep. 20:14-21:11; *see also* Pl.'s SUF ¶ 11.  Defendants assert that Mr. Yorzinski was placed under arrest because he refused to leave the area despite several instructions to do so and because he was "confrontational" with the police.  Griffo Dep. 19:19-20:7.

Regardless of which version of events led to Mr. Yorzinski's arrest, it is undisputed that, ultimately, Sergeant Griffo instructed Officer Soto to arrest Mr. Yorzinski "because [he] was ejected from the game and was still remaining on Yankee Stadium property" and due to his "disorderly conduct."  Defs.' SUF ¶¶ 13-14; Soto Dep. 32:11-22, 39:18-25; Griffo Dep. 21:17-22:3.  In compliance with that instruction, at approximately 3:05 p.m. on September 1, 2012, Officer Soto placed Mr. Yorzinski under arrest for criminal trespass in the third degree and disorderly conduct. Defs.' SUF ¶¶ 13-15; Yorzinski Dep. 46:23-47:4; Soto Dep. 32:11-22, 39:18-25; Griffo Dep. 21:17-22:3; D'Andrea Decl., Ex. G.

Mr. Yorzinski was arrested for trespass because, unbeknownst to him, the spot on the sidewalk where his conversation with the officers took place was owned by the Yankees.  Defs.' SUF ¶¶ 13,15; Soto Dep. 32:11-22, 39:18-25; Griffo Dep. 21:17-22:3.  The Yankees' property line extends several feet beyond the stadium wall.  D'Andrea Decl., Ex. H, Affidavit of Cindy Kamradt ¶ 4.  At the time of his arrest, Mr. Yorzinski was standing on the sidewalk outside the stadium from which he had been ejected—at most ten feet away from the stadium's wall—but within the perimeter of the Yankees-owned property surrounding the stadium.  Defs.' SUF ¶¶ 13-16; Yorzinski Dep. 88:11-15, 89:10-12; D'Andrea Decl. Exs. C, H; Pl.'s SUF ¶ 17.  It is also not in dispute that Sergeant Griffo knew what parts of the sidewalk outside of Yankee Stadium were owned by the Yankees and, consequently, what parts were publicly-owned.  Defs.' SUF ¶¶ 5-6; Griffo Dep. 12:22-13:13, 35:15-23.

Following his arrest, Mr. Yorzinski was taken to a "police facility" within Yankee Stadium and held in a cell. Yorzinski Dep. 49:13-51:3, 52:9-20. After approximately three hours, Mr. Yorzinski was transported to the 44th Precinct where he was placed in another cell. *Id.* 53:10-54:24; D'Andrea Decl., Ex. G. Mr. Yorzinski was held in that cell from approximately 4:30 p.m. on the date of his arrest until approximately 9:00 a.m. the next morning. Yorzinski Dep. 58:12-59:18. On the morning of September 2, 2012, Mr. Yorzinski met with a court-appointed public defense attorney, and was arraigned for trespassing and disorderly conduct. Declaration of Mark C. Taylor in Support of Pl.'s Opp'n to Mot. ("Taylor Decl."), Ex. 2, Mathew Yorzinski 50-H Hr'g Tr. ("Yorzinski 50-H Hr'g Tr.") 18:6-19:10. Mr. Yorzinski was released without bail. *Id.* 19:11-15. At his next scheduled court appearance on January 30, 2013, the district attorney in charge of the case offered, and Mr. Yorzinski accepted, an adjournment contemplating dismissal. Yorzinski Dep. 61:8-62:4; Yorzinski 50-H Hr'g Tr. 23:12-24; Defs.' SUF ¶ 18; D'Andrea Decl., Ex. I. On July 29, 2013, the criminal charges against Mr. Yorzinski were dismissed. D'Andrea Decl. ¶ 19, Ex. I.

## B. Procedural History

Plaintiff commenced this action on February 27, 2014, naming the City of New York, Officer Soto, and an unidentified NYPD officer as defendants. Dkt. No. 2. The complaint raised several claims pursuant to § 1983, including false arrest, excessive use of force, unreasonable seizure in violation of his Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as municipal liability. Compl. ¶¶ 32-47, Dkt. No. 2. On June 8, 2015, Plaintiff filed a motion to amend his complaint, Dkt. No. 25, which the Court granted on June 9, 2015, Dkt. No. 29. Plaintiff filed his amended complaint on June 12, 2015, adding Sergeant Griffo as a defendant. Dkt. No. 30. The allegations in the amended complaint largely track those in Plaintiff's original complaint, and include false arrest, excessive force, malicious abuse of process, a due process violation for denial of

access to a telephone, violations of equal protection or privileges and immunities, municipal liability, and corresponding state law claims.  Am. Compl. ¶¶ 31-46, Dkt. No. 30.

On July 29, 2015, Defendants filed a motion seeking summary judgment in their favor on all of Plaintiff's claims.  Dkt. No. 39.  Plaintiff filed his opposition on August 19, 2015, expressly withdrawing all claims except his false arrest claim.[3]  Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 7, Dkt. No. 45.  On September 2, 2015, Defendants filed their reply in further support of their motion for summary judgment.  Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J. ("Defs.' Reply"), Dkt. No. 49.

## II.   LEGAL STANDARD

Defendants are entitled to summary judgment on a claim if they can "show[ ] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

To defeat a motion for summary judgment, Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

---

[3] In expressly withdrawing those claims, Plaintiff states that "[i]n the course of discovery, plaintiff did not obtain adequate evidence to support his claims other than his § 1983 claims for false arrest."  Pl.' Opp'n at 7.  Accordingly, Defendants' motion for summary judgment is granted as to the withdrawn claims.

475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Rather, the Court must decide whether a rational juror could find in favor of Plaintiff. *Id.*

## III.    DISCUSSION

### A. False Arrest

In analyzing claims for false arrest brought under § 1983, courts in this circuit "'generally look[ ] to the law of the state in which the arrest occurred.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (quoting *Davis v. Rodriguez,* 364 F.3d 424, 433 (2d Cir. 2004)). "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007)). To state a claim for false arrest under New York law, a plaintiff must show that:  "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks omitted).

"The existence of probable cause to arrest . . . is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Gonzalez v. City of Schenectady*,

728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852 (internal quotation marks and citation omitted)).  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has *committed or is committing* a crime." *Id.* (emphasis in original).  The test for probable cause is an objective one and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).  "[W]hether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the [arresting] officers." *Weyant*, 101 F.3d at 852.

"Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury," as "[t]heir function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).  "It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation." *Id.* at 371 (internal quotation marks omitted); *see also Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." (citation and internal quotation marks omitted)); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

An arresting officer thus does not have a "duty . . . to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003).  At the same time,

however, the Second Circuit has recognized that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted).  The Second Circuit has also held that "a police officer's awareness of the facts supporting a defense can eliminate probable cause." *Jocks*, 316 F.3d at 135; *see also id.* at 136 (holding that an arresting officer may not "deliberately disregard facts known to him which establish justification"); *Panetta*, 460 F.3d at 395 ("[A]n officer may not disregard plainly exculpatory evidence.").

Defendants assert that Plaintiff's false arrest claim fails as a matter of law because Sergeant Griffo and Officer Soto had probable cause to believe that Mr. Yorzinski committed criminal trespass.  Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Br.") at 6-10.  Under New York law, "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property. . . . " N.Y. Penal Law § 140.10.[4]  "A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so." N.Y. Penal Law § 140.00(5).  Where the premises "are at the time open to the public", however, a person "remains unlawfully" if "he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person." *Id.*

---

[4] The Court notes that § 140.10 enumerates a number of specific conditions that must exist in order for a person to be found guilty of criminal trespass in the third degree, the charged offense.  None of those conditions appear from the record to have existed at the place of Mr. Yorzinski's arrest—for example, the record does not show that sidewalk where he was arrested for trespass was "fenced or otherwise enclosed in a manner designed to exclude intruders," § 140.10(a), "an elementary or secondary school," § 140.10(c), "used as a public housing project," § 140.10(e), or a "right of way or yard of a railroad," § 140.10(g).  The parties have not addressed this issue in their briefs.  Accordingly, the Court will analyze whether Defendants had probable cause to arrest Mr. Yorzinski for violating the lesser-included offense under § 140.05, which provides that "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05.  Because the Court concludes that the undisputed facts do not establish that probable cause existed for an arrest under § 140.05, it follows that probable cause was not established with respect to the charged offense.

Accordingly, to establish probable cause for arresting Mr. Yorzinski for criminal trespass, Defendants must show that (1) there was a lawful order excluding Plaintiff from the property; (2) that the order was communicated to him by a person with authority to give the order; and (3) that Plaintiff defied the order. *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 265 (2013) (citing *People v. Munroe*, 853 N.Y.S.2d 457, 458 (N.Y. Sup. App. Term 2007)) (concluding that there was probable cause to arrest the plaintiff for criminal trespass in a bank that was open to the public because "a reasonable police officer was entitled to conclude that the statements of the bank employees delivered to the protestors," which asked them to move the protest outside the bank, "were lawful orders excluding the protestors from continuing protest activities within the bank's premises."); *see also Omor v. City of New York*, No. 13-CV-2439 RA, 2015 WL 857587, at *4 (S.D.N.Y. Feb. 27, 2015) (citing *Carpenter*, 984 F. Supp. 2d at 265) (finding that there was probable cause to arrest the plaintiff for trespass where he refused to leave a local government office that was open to the public after being asked to leave the premises by at least two office staff members).

Based on the undisputed facts, the Court cannot find that Defendants have established that Officer Soto had probable cause to arrest Mr. Yorzinski for criminal trespass.  It is true that Mr. Yorzinski's knowledge that the sidewalk where he stood at the moment of his arrest was within the property line owned by the Yankees is immaterial to a determination that the officer had probable cause to arrest him for criminal trespass. *See, e.g., Zaniewska v. City of New York*, 569 F. App'x 39, 40 (2d Cir. 2014) (affirming the district court's grant of summary judgment in favor of defendants and finding that the police officer's knowledge at the time of the arrest that the premises were abandoned gave rise to probable cause to arrest squatters at the scene for trespass even where there was a disputed issue of fact as to whether the plaintiff knowingly entered and remained on the premises); *Mitchell v. City of New York*, No. 12 CIV. 2674 LAK, 2014 WL 535046, at *4 (S.D.N.Y. Feb. 11, 2014) (finding that the arrests at issue were supported by probable cause where the police

"were reasonable in believing that [the apparently abandoned property] was not 'open to the public' . . . was a private residence, not a store, park, or other obviously public facility," and stating that "[r]elevant here is not whether the plaintiffs in fact knowingly entered or remained unlawfully [in the seemingly abandoned property], but whether the police had probable cause to believe that they had done so.  In other words, probable cause is established and summary judgment for the defendants is warranted if there is no dispute as to the relevant events and that the police had knowledge 'sufficient to warrant a person of reasonable caution' to believe that the arrestees committed trespass.") (citations omitted).

But regardless of what Mr. Yorzinski knew with respect to his particular location, Defendants have not established that his removal from Yankee Stadium constituted a lawful order to leave *all* Yankees-owned property, including the sidewalk where he was ultimately arrested, such that Officer Soto had probable cause to arrest him for criminal trespass.[5]  As is clear from the undisputed facts, Mr. Yorzinski was escorted out of and removed from the *stadium*.  Defs.' SUF ¶ 3.  Specifically, the Yankee Stadium attendant "walked [Mr. Yorzinski] outside of the stadium and left [him] outside the stadium.  [The attendant then] walked back inside."  Yorzinski Dep. 33:12-34:7.  In the period following his removal, Plaintiff sought assistance—from Yankee Stadium personnel and the police—to get back inside the stadium.  *Id.* 39:17-40:2, 40:20-41:17, 41:18-20, 42:17-18, 43:14-44:3.  The record does not suggest that prior to his brief interaction with the police, Mr. Yorzinski was ever told to leave the sidewalk outside of the stadium.  Indeed, it is difficult to imagine how Mr.

---

[5] In their reply brief, Defendants contest Plaintiff's argument that a lawful order was necessary in order to trigger liability for criminal trespass in the third degree, arguing that Plaintiff should not be allowed to advance a new legal theory at this stage of the proceedings, framing the issue as one involving the plaintiff's due process rights.  Defs.' Reply at 4-6.  As set forth above, however, the requirement that a lawful order not to remain on the property be communicated is a clearly established element of criminal trespass in publicly-accessible property.  *See Carpenter*, 984 F. Supp. 2d at 265.  Plaintiff's argument focuses on whether at any point Mr. Yorzinski's license to remain on sidewalk was revoked; it is not a newly-introduced argument regarding Mr. Yorzinski's due process rights.

Yorzinski—or anyone for that matter—could have interpreted his removal from the stadium as an eviction from surrounding area that is owned by the Yankees. Aside from confiscating his tickets, the attendant provided no further instructions or any indication that Mr. Yorzinski was no longer permitted to be on the sidewalk, where the attendant left him. *Id.* 38:11-13 (stating that the attendant who escorted him out did not say anything as he led Mr. Yorzinski out of the stadium). The Yankee Stadium incident report states that once the attendant "carried on to eject the Guest . . . Mathew [sic] Yorzinski left the building with no further incident." D'Andrea Decl., Ex. F. The two attendants Mr. Yorzinski approached outside the stadium said they were unable to help him reenter; they did not instruct him to leave the area entirely or to move beyond a certain point on the sidewalk. Yorzinski Dep. 33:12-34:7, 38:11-13.

Defendants would place the burden of proving that he was not ordered to leave the Yankees-owned sidewalk as well as the stadium on Mr. Yorzinski, but offer no basis for doing so. Defs.' Reply at 8. Pointing to no evidence in the record, Defendants argue that Plaintiff's ejection from the stadium constituted a lawful order excluding Mr. Yorzinski from all Yankees-owned property. Defs.' Br. at 8-10. But Defendants' own version of the facts arguably contradicts this interpretation. As they recount in their papers, "Sergeant Griffo tried to explain to plaintiff that it is the policy of Yankee Stadium not to allow re-entry *into the Stadium* upon ejection." *Id.* at 3 (emphasis added) (citations omitted); *see also* Defs.' Reply at 3 ("When Sergeant Griffo arrived at Gate Two, Yankee Stadium police were explaining to plaintiff that he was not allowed *inside of the Stadium* because of his ejection.") (emphasis added) (citations omitted). Thus, irrespective of any further instructions Mr. Yorzinski may have received from the police, Defendants have not established as a matter of undisputed fact that Mr. Yorzinski's removal from the *stadium* revoked his license to remain on the part of the sidewalk outside that is otherwise accessible to the public but is owned by the Yankees.

The undisputed facts also do not support the conclusion that the police gave Mr. Yorzinski a lawful order to leave all Yankees-owned property outside the stadium. Based on Mr. Yorzinski's account of the events leading up to his arrest, of the group of NYPD officers who he encountered outside the stadium, he primarily spoke to Officer Soto, not Sergeant Griffo. Yorzinski Dep. 44:21-45:4. And after an exchange that lasted approximately two to three minutes, the only thing Officer Soto told Mr. Yorzinski was, "go away or are you coming with me." Pl.'s SUF ¶ 11; Yorzinski Dep. 45:24-46:9, 46:18-20, 48:5-9. Officer Soto's statement did not specify precisely where Mr. Yorzinski should go—and how far—in order to avoid "coming with" him. He did not, for example, tell Mr. Yorzinski to go beyond Yankee's property line or to leave the sidewalk. In the absence of more specific instructions, Officer Soto's "go away" order could reasonably be understood by a jury to suggest that Mr. Yorzinski simply had to get away from the group of NYPD officers, not that he had to retreat beyond a certain point so as not to commit trespass.

Defendants argue that "Sergeant Griffo repeatedly told plaintiff to leave the property of Yankee Stadium" and that Mr. Yorzinski "refused to leave the scene." Defs. Br. at 3; *see also id.* at 10 ("Sergeant Griffo gave repeated instructions to plaintiff to leave the area.") (citations omitted). While such facts might support a conclusion that Mr. Yorzinski was given a lawful order to leave the premises and that he defied that order, Plaintiff disputes this version of the story. *See* Pl.'s SUF ¶ 11. Defendants acknowledge as much, but nevertheless argue that, in deciding their motion for summary judgment, the Court may rely on their version of the facts to find that a "'lawful order' . . . was given to plaintiff." Defs. Reply at 5. As Defendants are well aware, the Court cannot do so. *See Killian*, 680 F.3d at 236 (stating that at when deciding a motion for summary judgment, courts are "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.").

Moreover, even if Officer Soto's instruction were sufficient to qualify as a lawful order to leave all Yankees-owned property, in Mr. Yorzinski's version of the events, he was not provided with an opportunity to comply. As soon as he turned away, Officer Soto grabbed Mr. Yorzinski's arm and arrested him; Mr. Yorzinski "didn't even really get a chance to go away." Yorzinski Dep. 46:23-47:4, 48:10-24. Based on the undisputed facts, therefore, the Court cannot conclude that Mr. Yorzinski failed to comply with a lawful order to leave the area in which he was standing at the time of his arrest. Whether Officer Soto's statement constituted a lawful order with which Mr. Yorzinski failed to comply is a disputed fact for the jury to decide, not for the Court to resolve on summary judgment. *See Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015) (concluding that a fact-finder considering all the evidence could conclude that an instruction that plaintiff "should go home" was not a lawful order to leave the premises).

Defendants do not directly argue in their submissions that the officers had probable cause to arrest Mr. Yorzinski for disorderly conduct. That omission from the briefing may have been driven by an awareness that the undisputed facts do not establish that there was probable cause to arrest Mr. Yorzinski for such a violation. Mr. Yorzinski was arrested for violating N.Y. Penal Law § 240.20(6), pursuant to which "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Penal Law § 240.20(6); *see also* D'Andrea Decl., Ex. G. "Whether a police officer has probable cause to arrest individuals for refusing a lawful order to disperse depends on two factors: (1) the extent to which police communicated the orders to the crowd; and (2) whether individuals had an opportunity to comply with the orders." *Mesa v. City of New York*, No. 09 CIV. 10464 JPO, 2013 WL 31002, at *13 (S.D.N.Y. Jan. 3, 2013) (citations omitted); *see also Dinler v. New*

*York*, No. 04 Civ. 7921, 2012 WL 4513352, at *10 (S.D.N.Y. Sept. 30, 2012) (citing *People v. Carcel*, 3 N.Y.2d 327, 333 (N.Y. Ct. App. 1957)).

The undisputed facts do not support a finding that both criteria were met in this case. As a preliminary matter, it is not clear from the record that Mr. Yorzinski was, in fact, "disorderly." At the very least, that issue is in dispute. Defendants maintain that Mr. Yorzinski was "'confrontational' with the police." Defs.' Reply at 2-3 (citations omitted). Mr. Yorzinski, on the other hand, maintains that he asked Officer Soto for help, explained to him "what was going on," suggested that they "go talk to some people and get this straightened out," and said that he "felt like [he] was being treated unfairly and . . . the situation was pretty ridiculous on [his] part." Yorzinski Dep. 45:12-46:7. Mr. Yorzinski also told Officer Soto that he "planned to write a report about this incident" because he "didn't want it to happen to any other guests at the stadium." *Id.* 46:6-9. Even if the Court were to adopt Defendants' version, however, as described above, in Mr. Yorzinski's version of the story, he was never given an opportunity to comply with Officer Soto's "go away" order. Based on Mr. Yorzinski's account, he "didn't even really get a chance to go away." *Id.* 46:23-47:4. Before Mr. Yorzinski had a chance to retreat, Officer Soto grabbed his arm and placed him under arrest. *Id.* 48:10-24. In light of the factual disputes concerning whether Mr. Yorzinski received prior orders to disperse from Sergeant Griffo—and whether he was given sufficient time to comply with Officer Soto's order—the Court cannot conclude, as a matter of law, that there was probable cause to arrest Mr. Yorzinski for disorderly conduct and that Defendants are entitled to summary judgment on that ground.

### B. Qualified Immunity

Police officers are immune from liability in § 1983 in suits brought against them in their individual capacities if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818

(1982).  The Second Circuit has explained that "[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641 (1987)); *see also Weyant,* 101 F.3d at 857 ("[P]ublic officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights.").

"[A]n arresting officer is entitled to qualified immunity on claims of false arrest and malicious prosecution if either:  (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010) (citing *Walczyk v. Rio,* 496 F.3d 139, 163 (2d Cir. 2007); *see also Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015) (stating that an officer need only have "arguable probable cause," which exists if either it was objectively reasonable to believe that probable cause existed or if officers of reasonable competence could disagree on whether probable cause existed); *Posr v. Court Officer Shield #207*, 180 F.3d 409, 416 (2d Cir. 1999)).  The Second Circuit has referred to the latter category as "arguable probable cause" and described it as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law.  It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (internal quotation marks and citations omitted) (emphasis in original).

"This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Courts may deny motions for summary judgment on qualified immunity grounds only where an officer's judgment was "so flawed that no reasonable officer would have made a similar choice." *Id.*  In the end, qualified immunity "protects government officials when they make 'reasonable mistakes' about the legality of their actions." *Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  To assess whether there was arguable probable cause for an arrest, courts are reminded that police officers are "entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences." *Cerrone*, 246 F.3d at 203.  Where conflicting versions of the facts exist, however, an officer is entitled to qualified immunity only if "the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (emphasis added).

Here, given the disputed issues of fact, the Court cannot conclude that, as a matter of law, Defendants are entitled to qualified immunity.  As discussed above, whether Mr. Yorzinski was given a lawful order to leave all Yankees-owned property—either by stadium staff or by the police— remains in dispute.  Defendants assert that it was reasonable for Officer Soto and Sergeant Griffo to believe that there was probable cause because they were informed by Yankee Stadium staff that Mr. Yorzinski was ejected from the stadium and, upon their arrival at the scene, they saw that Mr. Yorzinski "remained on Yankee Stadium property" and "was improperly seeking re-entry." Defs.' Br. at 17.  Defendants further contend that Sergeant Griffo gave Mr. Yorzinski "several orders to remove himself from Gate Two prior to his arrest," an account they acknowledge that Plaintiff disputes. Defs.' Reply at 5.  That Defendants "would have had probable cause under [their] own version of the facts is irrelevant for the purposes of summary judgment." *Mesa*, 2013 WL 31002,

at *13; (citations omitted).  "[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness."  *Husain v. Springer*, 494 F.3d 108, 133 (2d Cir. 2007) (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999)); *see also Mesa*, 2013 WL 31002, at *13 (declining to find arguable probable cause for failure to disperse where, "according to [plaintiff's] narrative, he was dispersing after the incident . . . and it was the police that subsequently pursued and arrested him"); *Smith v. Cnty. of Nassau*, No. 10-CV-4874 MKB, 2015 WL 1507767, at *13 (E.D.N.Y. Mar. 31, 2015), *aff'd*, No. 15-1251-CV, 2016 WL 1040150 (2d Cir. Mar. 16, 2016) (finding that, given disputed issues of fact concerning "whether the officers could reasonably believe that Plaintiff knowingly occupied the Property unlawfully, qualified immunity cannot be resolved at this stage of the litigation.").[6]  Accordingly, the Court finds that it is premature to determine whether Defendants are entitled to qualified immunity on Plaintiff's false arrest claim.  That claim survives summary judgment and must proceed to trial.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied with respect to Plaintiff's false arrest claim and granted with respect to Plaintiff's withdrawn claims for unreasonable seizure, excessive force, malicious abuse of process, violation of due process, violation

---

[6] Defendants do not argue that there is an alternative basis for finding that Officer Soto and Sergeant Griffo are entitled to qualified immunity—namely, that it was reasonable to believe that there was probable cause to arrest Mr. Yorzinski for disorderly conduct.  Even if Defendants had raised that issue, however, that argument fails for largely the same reason as their claim for arguable probable cause for criminal trespass.  As discussed in detail above, whether Mr. Yorzinski was given an order to disperse and sufficient time to comply with the order remains in dispute, thus precluding summary judgment in favor of Defendants on qualified immunity grounds.  *Robison*, 821 F.2d at 921.

of equal protection or privileges and immunities, municipal liability, and corresponding state law claims.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 39.

SO ORDERED.

Dated:  March 31, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge